No. 23-16123

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

SACRAMENTO HOMELESS UNION, et al.,

*Plaintiffs-Appellees*

v.

CITY OF SACRAMENTO

*Defendant-Appellant.*

On Appeal from the United States District Court for the Eastern District
of California
Case No. 2:22-cv-01095-TLN-KJN
Judge: Troy L. Nunley

## RESPONSE OF PLAINTIFF/APPELLEE SACRAMENTO HOMELESS UNION TO DEFENDANT CITY OF SACRAMENTO'S MOTION FOR PANEL/EN BANC PETITION FOR RECONSIDERATION OR IN THE ALTERNATIVE PETITION FOR PANEL/EN BANC REHEARING

Anthony D. Prince, SBN #202892
General Counsel, California Homeless Union/Statewide Organizing Council
Law Offices of Anthony D. Prince
Berkeley, CA 94705
Tel: 510-301-1472
princelawoffices@yahoo.com

1

## TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Where Do We Go Berkeley15* F.3d 707, 710 (9th Cir. 1997………..7,8

*Honig v. Doe*, 484 U.S. 305………………………………………4,5,6

*Turner v. Rogers*, 564 U.S. 431…………………………………4,5,6.

## ARGUMENT

**The City Seeks to Continually and Artificially Manufacture and Re-Manufacture the "Capable of Repetition Yet Evading Review Exception"**

Plaintiff/Appellee Sacramento Homeless Union is opposed to Defendant/Appellant's Motion for Panel/En Banc Reconsideration Or In The Alternative Petition For Panel/En Banc Rehearing.

While it is true that Plaintiff initially agreed with Appellant's Statement of Jurisdiction, i.e., that the case is one "capable or repetition but evading review," Plaintiff did *not* argue, contrary to Defendant's assertion, either in its brief or at oral argument that the same or sufficiently similar circumstances would *necessarily* re-occur.

In fact, Plaintiff made it very clear, particularly at oral argument, that going forward, it was *entirely up to the **City*** whether it was going to follow or disregard *its own protocols* for clearing homeless encampments during excessive heat, defined by the City as temperatures reaching or exceeding 90 degrees Fahrenheit.

3

It was the City's failure to follow its own protocol which compelled the Union to seek and obtain injunctive relief in the first place. That protocol requires that in clearing homeless encampments, the City must take into consideration excessive heat which the City defines as 90 degrees Fahrenheit or greater. Had it done so in the Summers of 2022 and 2023 there would have been no need for Plaintiffs to repeatedly return to court to seek and obtain injunctive relief because by observing its own extreme weather protocol, the state-created danger of that was the basis for the District Court's orders resulted would not have existed.

To engage repeatedly in the same conduct when that conduct is completely avoidable, and, in the process, compel the victims of that conduct to seek injunctive relief is to create wholly artificial, *manufactured* grounds for asserting the "capable of repetition yet evading review" exception to mootness.

In *Honig v. Doe*, 484 U.S. 305, cited by the Supreme Court in *United States v. Sanchez-Gomez, et al.* 138 S.Ct. 543, the high court considered a disabled student's challenge to his suspension from school for disruptive behavior and found that "given his *inability* to conform his conduct to socially acceptable norms" or "govern his aggressive, impulsive behavior" it was "reasonable to expect that [the student would] again in the type of misconduct" that precipitated his suit. *United States v. Sanchez - Gomez et al. (Emphasis added.)*

4

In the same case, the Supreme Court cited to *Turner v. Rogers*, 564 U.S. 431 in which the Court determined that "an indigent person repeatedly held in civil contempt for failing to make child support payments, who was at the time over $13,000 in arrears and whose next hearing was only five months away" was "destined to find himself in civil contempt proceedings again." Thus, the Court found that the challenged denial of appointed counsel at his contempt hearing was thus "capable of repetition."

In both *Honig* and *Rogers*, the exception applied, said the Court in *United States v. Sanchez-Gomez,* because it "rested on the litigants' *inability, for reasons **beyond their control,** to prevent themselves from transgressing and avoid recurrence of the challenged conduct." (*Id.*) (Emphasis added.

Here, the affirmative conduct challenged by the Homeless Union, the transgression entailed in the affirmative conduct of clearing homeless encampments during a potentially deadly heat wave, can hardly be said to have been "beyond the control" of the City of Sacramento. Here there was no "inability" to follow its own protocols for the clearing of encampments during temperatures the City itself has defined in those same protocols as excessive. In *Lane v. Williams,* 455 U.S. 624, cited in United States v. Sanchez-Gomez, the Supreme Court stated, "[W]e generally have been unwilling to assume that the party seeking relief will repeat the misconduct

that would once again place him or her at risk of [being enjoined from the misconduct]."

Here, the City of Sacramento asserts that under "capable of repetition yet avoiding review" it will again have its "hands tied" because assuredly, there will be another hot summer and there will be encampments that need to be cleared and the Homeless Union most certainly will once again file suit and seek a preliminary injunction. However, here, unlike in *Honig* and *Rogers,* it is clearly **not** "beyond the control" of the City to avoid once again engaging in the misconduct that repeatedly landed them in court and made them subject to four successive preliminary injunctions in the summers of 2022 and 2023. Defendant should not be allowed to twist the legitimate exception to mootness where and when the facts support its application into a self-fulfilled prophecy and provocation to force the Union into Court to confront misconduct by the City of Sacramento that is clearly avoidable.

Here, the City seeks to convert an exception to mootness as a sword and shield: a shield against injunctive relief itself brings on through deliberate misconduct, a self-fulfilling prophecy by way of ignoring its own protocol for clearing encampments under conditions of extreme heat and a sword barely concealed in its Appeal and now in its motion for reconsideration/rehearing by the panel or en banc with which to attack the doctrine of state-created danger itself.

The City cites to the District Court's August 16, 2023 Order permitting plaintiffs to seek future injunctive relief to support its argument that the "repetition/evading review" applies to this case. But the conveniently ignored fact that the Court actually *denied* Plaintiffs motion to extend the August 16 Order finding that there were an insufficient number of days during which the temperatures would be excessive to justify keeping the injunction in place for the remainder of the Summer of 2023. In other words, the most recent Order in this still active case showed that the conditions giving rise to the earlier injunctions no longer existed did not re-occur and need not necessarily again present themselves, unless, of course, the City chooses once again to disregard its own heat related protocols.

### Appellant's Reliance on Where Do We Go Berkely is Misplaced

The injunction that is the subject of this appeal lasted no more than two weeks and was, as Judge Nunley stated in his Order, essentially based on a Joint Statement of the parties who he had instructed, pursuant to the Order of August 3, 2023, to meet and confer on the terms of a narrower injunction that would better balance the parties' respective interests. 2-ER-99-104.

The injunction gave the City a great deal of flexibility in managing actual safety issues at encampments where the "City may clear and manage debris, vector, and safety issues of encampments." 1-ER-8.

7

This flexible PI was consistent with the City's own protocols that "Before relocation of an encampment... staff should consider the following factors...excessive heat or cold at the time of relocation." 2-ER 124; 3-ER-384.

Appellants rely on *Where Do We Go Berkeley v. Cal. DOT* 32 F.4th 852 (9th Cir. 2022) to argue against mootness, but that case is clearly distinguishable in an important aspect: In *Where Do We Go Berkeley* the Ninth Circuit was weighing in on a cohesive internal protocol for managing encampments during COVID-19 Pandemic. In the instant case, The City of Sacramento took self-contradictory positions about its protocols to clearing encampments.

Sacramento helped craft the injunction in its joint statement 2-ER-99-104. obtained many of the police powers it sought 1-ER-8, and it was consistent with their internal policies to "excessive heat or cold at the time of relocation." 2-ER 124; 3-ER-384.

This internal ambivalence was the opposite in *Where Do We Go Berkeley* where capability of repetition and evading review was found because Cal DOT was cohesively following its own internal protocols.

Its important to note that *Where Do We Go Berkeley,* Cal Trans was *abstaining from clearing* the majority of encampments on its property. In recognition of the dangers of displacing unhoused people during the COVID-19 Pandemic, Cal Trans established four level system for categorizing encampments. In that protocol,

8

Cal Trans was not displacing people living in Level 3 and Level 4 encampments –
but had adopted procedures for clearing Level 1 and Level 2 encampments that it
deemed hazardous to highway motorists and infrastructure.

Accordingly, the Ninth Circuit found the case was not moot because the Covid
19 pandemic was ongoing, and to clarify that Level 1 and Level 2 encampments
could be cleared – without opining about clearing of the Level 3 or 4.

In contrast, there is no need for such clarification in Judge Nunleys order.
Consistent with *Where Do We Go*, the order permitted the City of Sacramento to
alleviate safety issues of encampments." 1-ER-8. This broad grant of authority meant
that *anything* could be cleared *if it constituted a safety issue.*

The City is appealing an order that it claims tied its hands. But its hands were
not tied. The City got what it asked for in the Joint Statement [2-ER-99-104].

The City has made a red herring argument claiming it lacked authority to deal
with health and safety issues, when it had complete authority to do so 1-ER-8. The
City wants to be empowered to behave in ways contradictory to their own policies 2-
ER 124; 3-ER-384, and what they proposed in the Joint Statement 2-ER-99-104, and
against the opinions of their own public health experts 4-ER-882-889.

This contrasts strongly with *Where Do We Go Berkeley,* where Cal Trans had
actually had cohesive approach. But here the capability of repetition must be put in
doubt, because the City of Sacramento's approach to the issues in the case are

9

inconsistent. They are essentially appealing their own choices in the Joint Statement and in their own implementation of the PI. They can make different choices in the future.

## CONCLUSION

Plaintiff/Appellees were and are fully prepared to argue the merits in this case, and show that the District Court acted well within its discretion to order the injunctive relief necessary to protect the health, safety and, indeed, the lives of the thousands of unhoused, unsheltered persons represented by the Sacramento Homeless Union during an historic heat wave.

At the same time, Plaintiffs contend that the panel's decision to dismiss the City's appeal on the grounds of mootness did not constitute an abuse of its discretion.

It is ironic that Appellants and their Amici, now seek to use this case, which is active and ongoing and which included orders that evolved to carefully balance the interests of the City with the 14th Amendment rights of the unhoused, as a barely concealed stalking horse to attack the doctrine of state-created danger.

Accordingly, we urge this Court to deny Appellant's motion.

Date: April 26 2024

LAW OFFICES OF ANTHONY PRINCE

*/s/ Anthony D. Prince*

10

Anthony D. Prince

*Attorney for Plaintiffs/Appellees
Sacramento Homeless Union, a local of the
Homeless Union/Statewide Organizing
Council; et. a*

11

## CERTIFICATE OF COMPLIANCE

I certify that pursuant to Circuit Rule 27-1, the attached motion for panel/en banc reconsideration is prepared in a format, typeface, and type style that complies with Fed. R. App. P. 27(d) complies with the page limitation. I certify that pursuant to Circuit Rule 35-4 and 40-1, the attached petition for panel/en banc rehearing is prepared in a format, typeface, and type style that complies with Fed. R. App. P. 32(a) and contains the following number of words: 811

Dated: April 26th 2024

## I.CERTIFICATE OF SERVICE

*Re: Sacramento Homeless Union, et al. v. County of Sacramento, et al. United States Court of Appeals for the Ninth Circuit Case No. 23-16123 USDC Case No. 2:22-cv-01095-TLN-KJN*

I, Anthony Prince, declare: That I am and was at the time of service of the papers herein referred to, over the age of 18 years, and not a party to the action; and I am employed in by the Law Offices of Anthony D. Prince. My place of business is 2425 Prince Street, Ste. 100 Berkeley, CA 94705. My telephone is 510-301-1472, and my email is princelawoffices@yahoo.com

On Friday, April 26th, 2024, I served the following documents described as:

RESPONSE TO MOTION FOR PANEL/EN BANC RECONSIDERATION OR

IN THE ALTERNATIVE PETITION FOR PANEL/EN BANC REHEARING on

all interested parties in this action addressed as follows:

Gökalp Gürer Sacramento City Attorney's Office
915 I Street, Room 4010 Sacramento, CA 95814-2608
Email: ggurer@cityofsacramento.org
Attorneys for Appellant City of Sacramento

Andrea M. Henson
 Law Offices of Andrea M. Henson
5716 Folsom Boulevard Suite 223 Sacramento, CA 95819
Email: andrea@ahensonlaw.com

Mark E. Merin
LAW OFFICE OF MARK E. MERIN
1010 F Street Suite 300 Sacramento, CA 95814
Email: mark@markmerin.com

Ellen Marie Van Riper Ellen M. Van Riper,
Attorney at Law
1109 East Braeburn Drive Phoenix, AZ 85022
Attorneys for Amici Curia, The City of Phoenix, The International Municipal
Lawyers Association, The League of California Cities, The League of Arizona
Cities and Towns, and The California State Association of Counties
Email: ellen@evrlaw.com

Grayce Zelphin
ACLU Foundation of Northern California
39 Drumm Street San Francisco, CA 94111
Email: gzelphin@aclunc.org

*Lee H. Roistacher, Esq. (SBN 179619)
Dean Gazzo Roistacher LLP

2

440 Stevens Avenue, Suite 100 Solana Beach, CA 92075
Tel.: (858) 380-4683
E-mail: lroistacher@deangazzo.com
Attorneys for Defendant/Appellant City of Sacramento


Susana Alcala Wood, City Attorney (SBN 156366)
City Of Sacramento 915 I Street, Room 4010
Sacramento, CA 95814-2608
Tel.: (916) 808-5346
E-mail: ggurer@cityosacramento.org
Attorneys for Defendant/Appellant City of Sacramento

 X BY ELECTRONIC SERVICE: On the date stated above, I served the
documents described above on designated recipients via CM/ECF.


I declare under penalty of perjury under the laws of the United States of America
that the foregoing is true and correct. I declare that I am employed in the office of a
member of the bar of this court at whose direction the service was made.


 Date:  April 26, 2024

                        LAW OFFICES OF ANTHONY PRINCE


                        */s/ Anthony D. Prince*
                        Anthony D. Prince

                        *Attorney for Plaintiffs/Appellees*
                        *Sacramento Homeless Union, a local of*
                        *the Homeless Union/Statewide*
                        *Organizing Council; et.al*

3